UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>   Plaintiff,<br><br>vs.<br><br>FIRST ADVANTAGE BACKGROUND SERVICES CORP.,<br><br>   Defendant. | Case No.: 1:23-cv-01006<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

  John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against First Advantage Background Services Corp. ("First Advantage") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of employment background check reports that Defendant published to Plaintiff's potential employer. Defendant published a criminal record that was **expunged** *prior* to its reporting. Further, Defendant additionally reported one criminal record that did not even belong to Plaintiff.

**INTRODUCTION**

  1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

  2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of misdemeanor possession of cocaine. This criminal record did not belong to Plaintiff, but rather to Plaintiff's *brother*.

4. Moreover, Defendant reported a felony criminal record that was **expunged** and should not have been reported at all. Plaintiff took the necessary steps to secure expungement and there are no criminal records pertaining to Plaintiff that are eligible for reporting in response to an employment application.

5. Defendant's reporting is grossly inaccurate and untrue.

6. Due to Defendant's inaccurate publication to Plaintiff's prospective employer, wherein Defendant's reported an ***expunged*** felony and the misdemeanor drug offense of *Plaintiff's brother*, that prospective employer took adverse action on Plaintiff's employment application and revoked its job offer to Plaintiff.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Marion County, Indiana regarding the criminal records prior to publishing Plaintiff's report to his prospective employers.

8. Had Defendant performed even a cursory review of the underlying public court records, each would have discovered that the aforementioned felony record was expunged and not reporting to the public record and therefore, was not reportable on an employment purposed consumer report.

9. Further, had Defendant performed even a cursory review of the underlying public court record, in addition to discovering that the aforementioned felony record was expunged,

Defendant would also have discovered that the misdemeanor drug possession criminal record did not belong to Plaintiff.

10. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

11. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

13. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the expunged **felony** record – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

15. John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Indianapolis, Indiana, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Defendant First Advantage Background Services Corp. ("Defendant" or "First Advantage") is a Florida corporation doing business throughout the United States, including the State of Indiana and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328. First Advantage can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

17. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

18. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

26. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

33. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019),
https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf
("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at
http://www.ibisworld.com/industry/background-check-services.html.

34. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

35. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a felony record that was *expunged* and should not have been reported on an employment purposed consumer report.

41. Further, appropriate quality control review by Defendant would have made clear that Defendant was reporting the criminal record of another onto Plaintiff's employment purposed consumer report.

42. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Amazon Through Seattle Choice Transport

43. In or around March 2023, Plaintiff was in the full swing of a job search having recently relocated to Indiana.

44. Plaintiff published his resume on Indeed, a hiring specialized platform. Shortly thereafter, he received a message from Seattle Choice Transport, an Amazon recruiter, inviting him to apply for a truck driving position.

45. On or about March 28, 2023, Plaintiff applied for full-time employment as a truck driver with Amazon through Seattle Choice Transport, located in Indianapolis, Indiana.

46. Plaintiff was very excited for this opportunity. The job required him to work only three days out of the week but was still considered a full-time role. The job also offered a $50,000 annual salary and allowed drivers to work extra days to supplement that amount.

47. Plaintiff was particularly eager to get this job because the schedule would allow him more time to stay home with his wife and seven-year-old daughter during the week and still provide for his family.

48. Upon applying to Amazon, Plaintiff successfully completed an interview and passed a drug test.

49. During the interview, Plaintiff disclosed his expunged criminal record.

50. On or about March 28, 2023, Seattle Choice Transport extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a background check ("employment report.")

**Defendant Published an Inaccurate Background Check Report to Seattle Choice Transport**

51. Seattle Choice Transport contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

52. On or about March 28, 2023, Seattle Choice Transport ordered a criminal background check on Plaintiff from Defendant.

53. On or about March 30, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Seattle Choice Transport.

54. Within that employment report, Defendant published inaccurate information about Plaintiff.

55. Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing misdemeanor possession of cocaine conviction *in addition to* reporting the otherwise *expunged* felony criminal record, both from Marion County, Indiana, which appeared in the employment report as follows:

| | |
|---|---|
| Case Reference # | 49G25-1603-F6-008▮ |
| Case Date | 07/Mar/2016 |
| Name on File | ▮ |
| Address on File | ▮TH STREET, INDIANAPOLIS, IN |
| DoB on File | XX/XX/XXXX |
| Charge | POSSESSION OF COCAINE |
| Charge Type | MISDEMEANOR |
| Disposition | GUILTY |
| Disposition Date | 27/Sep/2017 |
| Sentence | JAIL 365 DAYS; CREDIT TIME SERVED 8 DAYS; JAIL SUSPENDED 349 DAYS; PROBATION 349 DAYS; PROBATION COMPLETED ON 09/21/2018; FINE AND COSTS |

| | |
|---|---|
| Case Reference # | 49G20-1308-FC-052▮ |
| Case Date | 13/Aug/2013 |
| Name on File | ▮ |
| Address on File | ▮TH STREET, INDIANAPOLIS, IN |
| DoB on File | XX/XX/XXXX |
| Charge | POSSESSION COCAINE OR SCHEDULE I OR II NARCOTIC DRUG - POSSESSION OF FIREARM |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 22/Aug/2014 |
| Sentence | PROBATION TERMINATED ON 07/01/2016; FINE AND COSTS; JAIL 6 YEARS; CREDIT TIME SERVED 56 DAYS; JAIL SUSPENDED 2 YEARS; PROBATION 90 DAYS |

56. Not only did Defendant report the felony criminal record despite the fact that it was expunged and should not have been reported, but Defendant also reported the misdemeanor possession of cocaine conviction (Case No. 49G25-1603-F6-008XXX) – which ***does not*** belong to Plaintiff.

57. A cursory review of the widely available underlying public court records confirms that criminal record associated with Case No. 49G25-1603-F6-008XXX belongs to another consumer.

58. Had Defendant actually consulted or obtained the widely available underlying public court records regarding the misdemeanor conviction, it would have seen obvious discrepancies between the consumer associated with misdemeanor criminal record and Plaintiff.

59. Plaintiff's first and middle name, date of birth, social security number, and address are different from the offender associated with the misdemeanor case.

60. Further, had Defendant actually consulted or obtained the widely available underlying public court records regarding the felony criminal record, it would have been discovered that Plaintiff successfully completed the requirements necessary to have felony criminal record expunged.

61. The sole reason Defendant inaccurately reported criminal records was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

62. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of misdemeanor possession of cocaine and that the felony criminal record was expunged and would not have reported the same.

63. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Seattle Choice Transport Revokes Plaintiff's Job Offer

64. On or about March 30, 2023, Plaintiff was notified by Seattle Choice Transport that Plaintiff could not work for Amazon as a direct result of the criminal records reported by Defendant.

65. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the misdemeanor and felony convictions contained within the subject employment report.

66. Plaintiff contacted Seattle Choice Transport and informed them that misdemeanor criminal record does not belong to him, and that the felony criminal record was expunged.

67. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting, both in relation to the Amazon position, but also the impact of the same on his future.

68. Specifically, Defendant reported a misdemeanor possession of cocaine conviction that does not belong to Plaintiff and the felony criminal record that was expunged. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to Seattle Choice Transport, but Defendant failed to obtain or perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in Defendant's Employment Report

69. On or about March 30, 2023, desperate to secure employment with Amazon and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

70. Plaintiff identified himself and provided information to Defendant to support his dispute.

71. Plaintiff specifically disputed the inaccurate reporting of the misdemeanor record that didn't belong to him as well as the felony record that was expunged and should not have been reported.

72. Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

### Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report

73. In or around early-May 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute, conceded its erroneous reporting of the misdemeanor record, and confirmed that the criminal record of another individual had since been removed.

74. However, Defendant failed to remove the *expunged* criminal record from Plaintiff's consumer report.

75. Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's March 2023 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

76. But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

77. Defendant's false report cost Plaintiff a promising, well-paying job with Amazon.

78. The position with Amazon would have allowed Plaintiff to work only three days out of the week while still maintaining full-time employment. Plaintiff was set to earn $50,000 a year with the option to work extra days to supplement that amount. The role also offered a competitive benefits package. More importantly, Plaintiff was excited about the schedule because

it would have allowed him to spend more time with his wife and seven-year-old daughter while still being able provide for the family.

79. Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek employment, Plaintiff was forced to obtain a different, lesser paying job working for a roofing company. Further, the schedule does not allow the Plaintiff to spend as much time with his family.

80. Moreover, Plaintiff experienced incredible marital strife, because he, along with his family, had to move in with his parents, because he could not afford the rent.

81. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

82. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

///

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

83. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

84. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

85. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

86. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

87. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

88. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

89. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

90. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

91. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

92. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

93. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

94. On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to him, namely.

95. In response to Plaintiff's dispute, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

96. Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

97. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

98. Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

99. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


Dated: June 9, 2023

*/s/ Jenna Dakroub*
Jenna Dakroub, GA #385021
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff*